# EXHIBIT B

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MTB BRIDGEPORT-NY OPERATING LLC, *et al.*,[1] | Case No. 11-12707 ( ) (Joint Administration Requested) |
| Debtors. | |

## BID PROCEDURES

MTB Bridgeport-NY Operating LLC and MTB Bridgeport-NY Licensee LLC (collectively the "Debtors") have filed Chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), jointly administered under Case No 11-12707 (___). By motion dated August 26, 2011 (the "Motion"), the Debtors seek, among other things, approval of the process and procedures set forth below (the "Bid Procedures") to effectuate the sale of the Acquired Assets (the "Transaction"). The Bid Procedures are designed to facilitate a full, open, and fair bidding process to maximize the value of the Acquired Assets for the benefit of the Debtors' creditors and their bankruptcy estates.

On _____ \_\_, 2011, \_\_:\_\_ \_.m. (Prevailing Eastern Time), as further described below, the Bankruptcy Court shall conduct a hearing (the "Sale Hearing") at which time the Debtors shall seek entry of an order (the "Sale Order") authorizing and approving the sale of the Acquired Assets (the "Proposed Sale") to the Successful Bidder (defined below) or NRJ TV LLC (the "Stalking Horse Bidder"), as applicable.

### Asset Purchase Agreement

The Debtors have prepared a form of asset purchase agreement (the "Agreement"),[2] pursuant to which the Successful Bidder (as defined below) will acquire, with such modifications as are agreed to by the Debtors, with prior notice to and in consultation with any Official Committee of Unsecured Creditors appointed (the "Committee"), and subject to approval of the Bankruptcy Court, the Acquired Assets. The Debtors and the Stalking Horse Bidder have entered into the Agreement. The assets to be purchased as part of the Transaction do not include the Excluded Assets. The Transaction contemplated by the Agreement is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court pursuant to Sections 363 and 365 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (collectively, the "Bankruptcy Code").

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are MTB Bridgeport-NY Operating LLC (0459) and MTB Bridgeport-NY Licensee LLC (4381).

[2] Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Agreement (defined herein).

**Participation Requirements**

Unless otherwise ordered by the Bankruptcy Court, in order to participate in the bidding process, each person (a "Potential Bidder"), except for the Stalking Horse Bidder, must first deliver (unless previously delivered) to (i) the Debtors, (ii) counsel for the Debtors, and (iii) counsel to the Committee, no later than _____, 2011, the following items (collectively, the "Participation Requirements"):

(a) Confidentiality Agreement. An executed confidentiality agreement in form and substance reasonably acceptable to the Debtors (each, a "Confidentiality Agreement");

(b) Identification of Potential Bidder. Identification of the Potential Bidder and any principals and representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated Transaction; and

(c) Proof of Financial Ability to Perform. Within five (5) days from the later of (i) a Potential Bidder's initial access to due diligence materials (as described below) or (ii) the date of entry of the Bid Procedures Order, written evidence that enables the Debtors to reasonably conclude that the Potential Bidder has the financial ability to close the contemplated Transaction and provide adequate assurance of future performance under all contracts to be assumed in such contemplated Transaction. Such information should include, *inter alia*, the following:

(i) the Potential Bidder's current financial statements (audited if they exist); and

(ii) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors, demonstrating that such Potential Bidder has the ability to close the contemplated Transaction; provided, however, that the Debtors shall determine, in their reasonable discretion, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of the Potential Bidder's financial qualifications; provided further, however, that in lieu of a Potential Bidder's financial statements, the Debtors may accept other information that reasonably demonstrates the Potential Bidder's financial condition.

**Access to Due Diligence Materials**

Upon satisfaction of the Participation Requirements, the Debtors will afford each Potential Bidder due diligence access to the Acquired Assets; provided, however, that (i) the Debtors shall have the right to reasonably limit the due diligence provided to competitors, and (ii) the Debtors will have no obligation to provide due diligence access after the Bid Deadline (defined below).

**Designation as Qualified Bidder**

A "Qualified Bidder" is a Potential Bidder that delivers the documents satisfying the Participation Requirements described in subparagraphs (a)-(c) above prior to the Bid Deadline (as defined below), and that the Debtors determine is reasonably likely to submit a *bona fide* offer and to be able to consummate a sale if selected as a Successful Bidder (defined below). As soon as is practicable, upon receipt of such documents, the Debtors shall notify the Potential Bidder that such Potential Bidder is a Qualified Bidder.

The Stalking Horse Bidder is a Qualified Bidder, and the Stalking Horse Bidder's bid is a Qualified Bid, as defined herein. The Stalking Horse Bidder is entitled to credit bid all or a portion of its claims against the Debtors, without otherwise complying with the Bid Procedures, to the fullest extent permissible under Section 363(k) of the Bankruptcy Code. The Stalking Horse Bidder is permitted to assign its credit bid to a third party designated by the Stalking Horse Bidder.

**Bid Deadline**

The deadline for submitting bids by a Qualified Bidder, other than the Stalking Horse Bidder, shall be _____, 2011, at 5:00 p.m. (Prevailing Eastern Time) (the "Bid Deadline"). A Bid (as defined below) received after the Bid Deadline shall not constitute a Qualified Bid (as defined below).

Prior to the Bid Deadline, a Qualified Bidder, other than the Stalking Horse Bidder, that desires to make an offer, solicitation, or proposal (a "Bid") shall deliver written copies of its Bid to: (i) counsel to the Debtors, Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, DE 19899 (Attn: William E. Chipman, Jr., Esq.); (ii) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware, 19801 (Attn: _____, Esq.); and (iii) counsel to the Committee, _____ (Attn: _____, Esq.) (collectively, the "Notice Parties"), by the Bid Deadline.

**Determination of Qualified Bid Status**

To be eligible to participate in the bidding process, each Qualified Bidder, other than the Stalking Horse Bidder, must deliver to the Debtors a written offer to be received by the Bid Deadline and compliant with each of the following conditions:

(a) Modified Agreement. A Bid must include fully executed transaction documents, pursuant to which the Qualified Bidder proposes to effectuate the contemplated Transaction. A Bid shall include a black-lined copy of the Agreement (the "Modified Agreement") to show all changes requested by the Bidder, including those related to the Purchase Price, and each and every executory contract and unexpired lease, the assumption and assignment of which is a condition to closing.

(b) Acquired Assets. Each Bid must be for all of the Acquired Assets or such portion of the Acquired Assets or any other assets of the Debtors as the Qualified Bidder wishes to purchase; provided, however, that the aggregate purchase price in any

Bid(s) for less than all of the Acquired Assets must equal or exceed the Minimum Initial Bid (defined below).

(c) Contingencies. A Bid may not be conditioned on obtaining internal approval, obtaining financing, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the Closing of specified representation and warranties or the satisfaction in all material respects at the Closing of specified conditions.

(d) Authorization to Bid. Each Bid must include evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the Modified Agreement.

(e) Good Faith Deposit. Each Bid, other than the Stalking Horse Bidder's Bid, must be accompanied by a cash deposit in an amount equal to ten percent (10%) of the highest proposed purchase price offered by the Qualified Bidder in its Qualified Bid (the "Good Faith Deposit").

(f) No Fees payable to Qualified Bidder. A Bid shall not request or entitle the Qualified Bidder, other than the Stalking Horse Bidder, to any termination fee, expense reimbursement, or similar type of payment.

(g) Financing Sources. A Bid must contain evidence of the ability to consummate the Transaction satisfactory to the Debtors and the Committee, with appropriate contact information for all such financing sources and may not contain any financing contingency.

(h) Minimum Initial Bid Requirement. Each Qualified Bidder's Bid shall have an initial minimum bid requirement equal to the Stalking Horse Bidder's Purchase Price, in cash (or cash equivalents), plus Two Hundred Fifty Thousand Dollars ($250,000) (the "Minimum Initial Bid").

(i) Other Evidence. Each Bid must contain evidence satisfactory to the Debtors, that the Qualified Bidder (based on availability of financing, experience, and other considerations) will be able to timely consummate the Transaction to purchase the Acquired Assets if selected as the Successful Bidder (as defined below).

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements, in the Debtors' reasonable discretion, after consultation with the Committee, and that satisfies the Bid Deadline requirement above, shall constitute a qualified bid (a "Qualified Bid").

**Auction**

Only in the event that the Debtors receive at least one (1) Qualified Bid (other than that of the Stalking Horse Bidder) by the Bid Deadline, the Debtors shall conduct an auction (the "Auction") of the Acquired Assets to determine the highest and otherwise best bid with respect to the Acquired Assets. No later than _____, 2011, at 5:00 p.m. (Prevailing Eastern Time), the Debtors will notify all Qualified Bidders and the Committee of (i) the highest Qualified Bid received by the Bid Deadline which shall serve as the baseline bid at the Auction (the "Baseline Bid"), and (ii) the time and place of the Auction. The Auction shall commence at 10:00 a.m. (Prevailing Eastern Time) on _____, 2011, at the offices of Landis Rath & Cobb LLP, 919 N. Market Street, Suite 1800, Wilmington, Delaware, 19899.

**Participation in the Auction**

Only the Debtors, the Stalking Horse Bidder, any representative of the Committee, and any other Qualified Bidder who has timely submitted a Qualified Bid (and professional advisors to each of these parties) may attend the Auction. Only the Stalking Horse Bidder and other Qualified Bidders may make any subsequent Qualified Bids at the Auction.

The Debtors and their professional advisors shall direct and preside over the Auction. Bidding at the Auction shall begin with an amount at least equal to the Baseline Bid. All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders and the Stalking Horse Bidder. The Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Successful Bid (as defined below).

**Terms of Overbids**

An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the Baseline Bid. Any Qualified Bidder's initial Overbid shall be at least $250,000 in cash (or cash equivalents, or in the case of the Stalking Horse Bidder, an additional credit bid in such amount) in excess of the Baseline Bid, and each subsequent Overbid must be made in increments of at least $250,000 in cash, cash equivalents, credit bid by the Stalking Horse Bidder, or such other consideration that the Debtors deem equivalent or better than at least $250,000 in cash, over the previous highest or best bid.

Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtors accept a higher Qualified Bid as an Overbid. The Debtors shall announce at the Auction the material terms of each Overbid and the basis for calculating the total consideration offered in each such Overbid.

**Closing the Auction**

Upon conclusion of the bidding process, the Auction shall be closed, and the Debtors shall (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the Sale process, including those factors affecting the speed and certainty of consummating the Transaction and the amount of the cash (or cash equivalents) consideration,

(ii) determine the highest or otherwise best offer for the Acquired Assets (the "Successful Bid"), the entity submitting such Successful Bid (the "Successful Bidder"), the next highest or otherwise best offer after the Successful Bid (the "Back-Up Bid"). and the entity submitting such Back-Up Bid (the "Back-Up Bidder"), and (iii) advise the Qualified Bidders of such determinations. The Back-Up Bid shall remain open, and the Back-Up Bidder shall be required to fully perform under such Back-Up Bid, until the earlier of consummation of the Transaction with the Successful Bidder or thirty (30) days following the Closing Date set forth in the Successful Bid. The Stalking Horse Bidder shall not be precluded from consulting with the Debtors as to which Qualified Bid is the highest and best bid notwithstanding the Stalking Horse Bidder's submission and pursuit of a credit bid.

**Failure to Close**

In the event the Successful Bidder fails to consummate the Transaction as a result of the Successful Bidder's default or breach under the applicable purchase agreement in accordance with the terms of such purchase agreement by the closing date contemplated in such purchase agreement, the Debtors shall: (i) retain the Successful Bidder's Good Faith Deposit as liquidated damages (along with any other rights available under such purchase agreement); and (ii) in consultation with the Committee, be free to enter into a new purchase agreement with the Back-Up Bidder at the purchase price contemplated in the Back-Up Bid.

Following the approval of the Sale of the Acquired Assets to the Successful Bidder at the Sale Hearing, if such Successful Bidder fails to consummate the approved Sale within _____ (\_\_) days after entry of an Order approving such Sale (subject to any required governmental constraints), the Debtors shall be authorized, but not required, to deem the Back-Up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Debtors shall be authorized, but not required, to consummate the Sale with the Back-Up Bidder without further order of the Bankruptcy Court.

**Consent to Jurisdiction as Condition to Bidding**

All Qualified Bidders, including the Stalking Horse Bidder, at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to a jury trial in connection with any disputes among any Qualified Bidder and the Debtors relating to the Auction and the construction and enforcement of the Qualified Bidder's contemplated Transaction documents, as applicable.

**Acceptance of Successful Bid**

The Debtors shall sell the Acquired Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of such Qualified Bid. The Debtors will be deemed to have accepted a Bid only when the Bid has been approved by the Bankruptcy Court at the Sale Hearing.

**Free of Any and All Interests**

As set forth in the Agreement, except as otherwise provided for therein or in another Successful Bidder's purchase agreement, all rights, titles, and interests in and to the Acquired Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the "Interests"), in accordance with Section 363 of the Bankruptcy Code, with such Interests to attach to the proceeds received by the Debtors from the Sale (the "Sale Proceeds") less the amount of cash necessary to fund (i) any professional fee carve-out approved by the Court as part of any debtor-in-possession financing approved by the Court in these cases (the "Cases") and (ii) such other wind-up costs as may be approved by the Court.

**Credit Bidding**

The Stalking Horse Bidder shall be entitled to credit bid all or a portion of its claims against the Debtors to the fullest extent permissible under Section 363(k) of the Bankruptcy Code. The Stalking Horse Bidder shall be entitled to assign its credit bid to any third party designated by the Stalking Horse Bidder.

**Sale Hearing**

The Sale Hearing shall be conducted by the Bankruptcy Court on _____, 2011, at \_\_:\_\_ \_.m. (Prevailing Eastern Time).

**Return of Good Faith Deposit**

The Good Faith Deposit of the Successful Bidder shall be applied to the Purchase Price of such Transaction at Closing. The Good Faith Deposits of all other Qualified Bidders, other than the Back-Up Bidder, shall be held in an interest-bearing escrow account until five (5) business days after the closing of the Auction, and thereafter returned to the respective bidders. The Good Faith Deposit of the Back-Up Bidder shall be held in an interest-bearing escrow account and shall be (i) applied to the Purchase Price in the event that the Successful Bidder fails to close and the Debtor opts to consummate the Transaction with the Back-Up Bidder, or (ii) returned to the Back-Up Bidder upon the entry of an order approving the Sale. In the event of a breach or failure to consummate an approved sale by the Successful Bidder, or by the Back-Up Bidder in the event the Successful Bidder fails to consummate an approved sale and the Debtor determines to consummate the Transaction with the Back-Up Bidder, the Debtors shall be entitled to retain the Good Faith Deposit as part of its damages resulting from the breach or failure to perform by the Successful Bidder or Back-Up Bidder, as applicable.

**Modifications**

The Bid Procedures may not be modified except upon order of the Bankruptcy Court or the express written consent of the Debtors, the Committee, and the Stalking Horse Bidder.

The Debtors in their reasonable discretion, may (i) determine which Qualified Bid, if any, is the highest or otherwise best offer, and (ii) reject, at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (a) inadequate or insufficient, (b)

not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Debtors, their estates, and their creditors.

* * * * *