# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MTB BRIDGEPORT-NY OPERATING LLC, *et al.*,[1] | ) ) | Case No. 11-12707 (KJC) (Jointly Administered) |
| | ) | |
| Debtors. | ) ) ) | |

Related to Docket No. 13

**OPPOSITION TO DEBTORS' MOTION FOR ENTRY OF ORDERS:
(A)(I) APPROVING BID PROCEDURES RELATING TO SALE OF THE DEBTORS'
ASSETS; (II) APPROVING BID PROTECTIONS; (III) SCHEDULING A HEARING
TO CONSIDER THE SALE; (IV) APPROVING THE FORM AND MANNER OF
NOTICE OF SALE BY AUCTION; (V) ESTABLISHING PROCEDURES FOR
NOTICING AND DETERMINING CURE AMOUNTS; AND (VI) GRANTING
RELATED RELIEF; AND (B)(I) APPROVING ASSET PURCHASE AGREEMENT AND
AUTHORIZING THE SALE OF CERTAIN ASSETS OF DEBTORS OUTSIDE THE
ORDINARY COURSE OF BUSINESS; (II) AUTHORIZING THE SALE OF ASSETS
FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS;
(III) AUTHORIZING THE ASSUMPTION, SALE, AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING
RELATED RELIEF [RE DOCKET NO. 13]**

MTB Equity LLC and Multicultural Television Broadcasting LLC (collectively, "Multicultural"), by and through their undersigned counsel, hereby object to the above-captioned Motion on the following grounds, and in support thereof, respectfully represent as follows:

## PRELIMINARY STATEMENT

Through the Motion, the Debtors seek to sell their television station assets (the "Station") to affiliates of their secured lender, NRJ, in exchange for a credit bid of NRJ's debt of $12

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are MTB Bridgeport-NY Operating LLC (0459) and MTB Bridgeport-NY Licensee LLC (4381).

million. The Debtors' equity interests are held in an irrevocable trust (the "Trust"). As conceded in his first day declaration in these cases, Lee W. Shubert, LC (the "Trustee") derives his powers to act on behalf of the Debtors through the Irrevocable Trust Agreement. Shubert Decl. ¶¶ 23-28 [Docket No. 4]. The Irrevocable Trust Agreement specifically limits the Trustee's powers with respect to selling the Debtors in one material respect—it absolutely prohibits the Trustee from selling the Debtors "for any consideration other than cash or other immediately available funds." *See* **Ex. A** to Declaration of Howard A. Topel attached hereto, Irrevocable Trust Agrmt. ¶ 5.1. Yet, through the Motion, the Trustee seeks approval of (i) Bidding Procedures that would allow NRJ affiliates to credit bid the NRJ debt, thus paying no cash in connection with the Station; and (ii) to ultimately approve the sale to NRJ for no cash, only in exchange for NRJ's credit bid.

The Motion is in clear violation of the Irrevocable Trust Agreement. The Trustee has no authority to offer up the Station for sale for anything other than cash or its equivalent. Unless NRJ offers cash, the Motion must be denied for lack of authority on the part of the Debtors to bring such Motion.

## FACTUAL BACKGROUND

1.  Multicultural was the owner of the Debtors. As detailed in the Trustee's first day declaration, the Debtors were in default under their Prepetition First Lien Credit Agreement and Prepetition Second Lien Credit Agreement beginning around November 2007 and continuing through the fall of 2008.

DOCS_DE:173432.1

2.      On October 30, 2008, Multicultural, its subsidiaries (including the Debtors), and the Debtors' lenders entered into a forbearance agreement (*See* **Ex. B** to Declaration of Howard A. Topel attached hereto, the "Forbearance Agreement") under which Multicultural agreed to transfer its interests in the Debtors and other affiliates pursuant to the terms of the Irrevocable Trust Agreement so that the Debtors could be sold in an orderly manner for the benefit of (i) the First Lien Lenders; (ii) the Second Lien Lenders; and (iii) Multicultural. Upon satisfaction of the first lien and second lien debt, the remaining proceeds would revert back to Multicultural. Ex. A, Sec. 6.2(b).

3.      The Irrevocable Trust Agreement, which is attached hereto as Exhibit A, named Shubert as the Trustee. Under the Irrevocable Trust Agreement, the Trustee agreed to accept and perform his duties in compliance with the terms thereof. *Id.* at Sec. 2.7. The Trustee's powers and duties to act with respect to the Debtors' assets are circumscribed by the terms of the Irrevocable Trust Agreement. "The Trustee will only have the rights, powers, and privileges to act on behalf of the Trust to the extent expressly provided in this Trust Agreement." *Id.* at Sec. 3.1(a). The Trustee was granted the express power to "sell, convey, transfer, or assign the Trust Asset," but such power was made expressly "subject to Section 5.1" of the Irrevocable Trust Agreement. *Id.* at Sec. 3.1(a)(v). And Section 5.1 specifically provides that any sale of the Trust Assets must be for cash or other immediately available funds:

> The Trustee shall take such steps as the Trustee deems necessary to sell, convey, transfer, or assign the Subsidiaries, or any part or asset thereof or any interest therein, on such terms and for such consideration as the Trustee deems desirable or appropriate; **provided, however, that the Trustee shall not, and shall not be authorized to, sell, convey, transfer or assign the Subsidiaries**

> **(or any part or asset thereof or interest therein) for any consideration other than cash or other immediately available funds.** The Trustee's actions with respect to the disposition of the Subsidiaries shall in all events be taken in a manner so as to maximize the Sale Proceeds.

Ex. A, at Sec. 5.1 (emphasis supplied).

4. NRJ TV LLC ("NRJ") is the 100% holder of the Prepetition First Lien Credit Agreement debt. Prior to the filing of this bankruptcy, the Trustee sold other of the Debtors' previously owned television stations to NRJ for *cash*. Specifically, on May 31, 2011, the Trust sold two television stations -- KCNS and WMFP to affiliates of NRJ for cash. *See* Shubert Decl. ¶ 27.

5. On August 26, 2011, the Debtors filed their chapter 11 petitions and the Motion. [Docket No. 13]. The Motion seeks authority for the Debtors to sell their Station assets to affiliates of NRJ for a $12 million credit bid, but no cash or other equivalent consideration. *See* Motion, Ex. B (Bidding Procedures), at p. 7; Ex. D (Asset Purchase Agreement), at Sec. 2.2(a) ("Buyer shall deduct the Purchase Price from the amounts owed to Buyer by Seller pursuant to the First Lien Credit Documents...."). Such a bid is expressly prohibited by the Irrevocable Trust Agreement.

6. As well, the Trustee has failed in other express obligations under the Irrevocable Trust Agreement with respect to the sale of the Station Assets. Section 5.5 of the Trust Agreement states: "The Trustee shall provide the First Lien Agent, Second Lien Agent, and Parent (i.e., Multicultural) with monthly reports setting forth the Trustee's efforts to sell the Stations as contemplated by this Agreement." Ex. A hereto, Sec. 5.5. Section 3.1(i) also

-4-

provides that the Trustee, through its broker, will provide weekly reporting to Multicultural regarding the status of sale efforts. *Id.*, Sec. 3.1(i). Although the Trustee was obligated to keep Multicultural informed about the status of sale efforts, including sale negotiations with third parties, the Trustee has failed to comply with these obligations.

## OBJECTION

7. The Motion must be denied for the simple reason that the Trust exceeded its authority in filing the Motion. The Trustee simply was not authorized to file any proposed sale or bidding procedures that proposed to convey ownership of the Station assets in exchange for anything other than cash or its equivalent. And where a debtor exceeds its corporate authority, such act is void as an *ultra vires* act. *See, e.g., In re Gen-Air Plumbing & Remodeling, Inc.*, 208 B.R. 426 (Bankr. N.D. Ill. 1997).

8. The fact that the Debtors and NRJ have actually conducted two prior transactions in cash (as opposed to a credit bid) is evidence that both parties are aware of the terms of the Irrevocable Trust Agreement, but for some reason, have now chosen to ignore or attempt an end-run on the express terms of that agreement in blatant violation of the Trustee's duties under the Trust.

9. The Motion is deficient in other respects as well.

10. <u>Inadequate Information to Evaluate Bidding Procedures</u>. There are several blanks for the key events, such as the bid deadline, auction, and sale hearing. Further, the Motion lacks any discussion or evidentiary support of the Debtors' efforts to market the Station prior to agreeing to sell it to NRJ via a credit bid. Thus, it is unclear whether the sale timeline,

when actually disclosed, will be adequate or sufficient to garner the highest and best purchase price of the Station assets. At a minimum, the hearing on this Motion must be continued to allow consideration of the proposed sale timeline.

11. <u>Bid Procedures Must Apply Equally To All Bidders</u>. The Deposit amount only applies to third party bidders and not the Stalking Horse Purchaser. If other Bidders default under their obligations as the Successful Bidder, the Debtors may look to the Deposit as liquidated damages. The same is not true for the Stalking Horse Purchaser since it has not posted a Deposit. The Stalking Horse Purchaser should be required to post a Deposit like any other Bidder. Absent such protection, the estate will have less of a remedy against the Stalking Horse Purchaser than it would against other bidders.

12. In addition, Multicultural's right to bid pursuant to the terms of the Forbearance Agreement should be expressly acknowledged in any Bidding Procedures. Specifically, the parties agreed as follows: "The parties hereby acknowledge and agree that the Liu's and their companies [i.e., Multicultural] shall be free to bid, without prejudice, on any of the Stations and any such bid shall be evaluated by the party controlling the sale process on the same basis as a bid from a disinterested third party." Ex. B hereto, at ¶ 11 ("Participation by the Liu's").

-6-

DOCS_DE:173432.1

## CONCLUSION

For the foregoing reasons, Multicultural requests that the Motion, including the Bidding Procedures and proposed sale to NRJ pursuant to the Asset Purchase Agreement, be denied.

DATED: September 27, 2011

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Laura Davis Jones

Laura Davis Jones (Bar No. 2436)
Robert Feinstein (*To be admitted pro hac vice*)
Bruce Grohsgal (DE Bar No. 3583)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

E-mail: ljones@pszjlaw.com
rfeinstein@pszjlaw.com
bgrohsgal@pszjlaw.com

Counsel to MTB Equity LLC and Multicultural Television Broadcasting LLC