IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MTB BRIDGEPORT-NY OPERATING LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 11-12707 (KJC)<br><br>(Jointly Administered)<br><br>Ref. Nos. 13 and 68 |

**RESPONSE OF THE DEBTORS TO OPPOSITION OF MTB EQUITY LLC
AND MULTICULTURAL TELEVISION BROADCASTING LLC
TO DEBTORS BIDDING PROCEDURES AND SALE MOTION**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby respond (the "Response") to the Opposition (the "Opposition") of MTB Equity LLC and Multicultural Television Broadcasting LLC ("Prior Equity") to the Debtors Bidding Procedures and Sale Motion (the "Motion") [Docket No. 13]. In support of this Response, the Debtors respectfully state as follows:

**RESPONSE**

1. After incurring over one hundred million of dollars of debt they could not repay and agreeing to allow the Trustee to liquidate the Debtors' assets to repay their loans, Prior Equity is now complaining about a totally fair and open process supervised by this Court designed to maximize the value for the Debtors' remaining assets.

2. Prior Equity's main complaint is "that the Trust exceeded its authority in filing the Motion." Opposition at ¶ 7. Prior Equity fails to realize that the "Trust" did not file the Motion; the "Debtors" filed the Motion. Prior Equity also fails to realize that neither of the

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers are (i) MTB Bridgeport-NY Operating LLC (0459) [Bankruptcy Case No. 11-12707 (KJC)]; and (ii) MTB Bridgeport-NY Licensee LLC (4381) [Bankruptcy Case No. 11-12708 (KJC)]. The mailing address for the debtors is 11077 Swansfield Road, Columbia, Maryland 21044-2724.

{895.002-W0016864.}

Debtors is a party to the Trust Agreement and it is questionable whether Prior Equity even has standing in these cases.

3. Moreover, the only case cited in their opposition in support of their argument, *In re Gen-Air Plumbing & Remodeling Inc.*, 208 B.R. 426 (Bankr. N.D. Ill. 1997), is inapposite. In that case an officer had filed a bankruptcy petition on behalf of a corporation without approval of the state court appointed receiver or the Board of Directors. The petition was dismissed because pursuant to section 1112(b) of the Bankruptcy Code the officer who filed the petition did not have authority under state corporate law to file the petition.

4. However, the authority for a debtor in a bankruptcy proceeding to sell its assets is not derived from state corporate law, but rather from section 363 of the Bankruptcy Code. Section 363(b)(1) provides that a debtor may sell its assets free and clear of all liens, claims and encumbrances after notice and a hearing. Prior Equity does not dispute that the Trustee had authority to file the subsidiaries' bankruptcy petitions pursuant to the Trust Agreement. The subsidiaries are now the Debtors and the Debtors' authority to dispose of assets derives not from the Trust Agreement, but from the Bankruptcy Code.

5. Given that 363(k) specifically authorizes credit bidding, this federal bankruptcy law right trumps any restrictions in the Trust Agreement between two non-debtors. *In re Federal-Mogul Global, Inc.*, 402 B.R. 625, 631 (D. Del. 2009) (the preemption doctrine is rooted in the Supremacy Clause); *See also* U.S. Const., art. VI, cl. 2 ("This Constitution, and the laws of the United States which shall be made in pursuance thereof...shall be the supreme law of the land."). Under the preemption doctrine, a state law yields to a federal law in any case where the state law either contravenes or interferes with the stated purpose of the federal law. *See*

*Hillsborough County, Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985) (*citing Gibbons v. Ogden*, 22 U.S. (9 Wheat) 1, 211 (1824)).

6. Without citing to any authority to support their argument, Prior Equity further objects to the proposed sale on the basis that section 5.1 of the Trust Agreement precludes a sale of the Debtors' assets for any consideration other than cash or other immediately available funds. This Court has held that a credit bid by a secured lender constitutes a cash bid for bankruptcy sale purposes. *In re Finova Capital Corporation*, 356 B.R. 609, 625-6 (Bankr. D. Del. 2006) (a secured lender's "credit bid" is the functional equivalent of a "cash" bid, at least as regards to the secured lender; the credit bid merely saves a step of payment by the lender, as buyer, to the lender, as seller, and thus acts as a convenience). *See, e.g., Cohen v. KB Mezzanine Fund II, (In re SubMicron Sys. Corp.)*, 432 F.3d 448, 461 (3d Cir. 2006) ("Because the Lenders had a valid security interest in essentially all the assets sold, by definition they were entitled to the satisfaction of their claims from available proceeds of any sale of those underlying assets. Their credit bid did nothing more than preserve their right to the proceeds, as credit bids do under § 363(k)."); *Altus Bank v. State Farm Fire and Casualty Co.*, No. 91-55329, 1992 U.S. App. Lexis 31899, at *2 (9th Cir. Nov. 19, 1992) ("the result of Altus Bank's full-credit bid is no different than if Altus had tendered cash to purchase the mortgaged property, or than if some other purchaser had bought the property at the foreclosure sale for the same amount of money."). It would be a complete fiction to require the secured lenders, who are already owed in excess of $120 million dollars, to bid with cash, only to have to return the cash at the closing.

7. Nor is there any harm to Prior Equity if the lenders are allowed to credit bid. If the bidding does get to levels that exceed the secured loan amounts, Prior Equity would only be entitled to any funds in excess of such amounts, which will by necessity be bid in cash.

8. The Debtors also believe that the provision in the Trust Agreement, requiring only cash sales, would be considered by this Court to be an unenforceable anti-alienation provision – if the Debtors were an actual party to the Trust Agreement. In analogous situations dealing with assignments of executory contracts and unexpired leases, the Third Circuit and this Court have noted that section 365(f) was "designed to prevent anti-alienation or other clauses in leases and executory contracts assumed by the [debtor] from defeating his or her ability to realize the full value of the debtor's assets in a bankruptcy case." *In re Headquarters Dodge, Inc.*, 13 F.3d 674, 682 (3d Cir. 1993); *The IT Group, Inc., et al.*, 350 B.R. 166, 178-9 (Bankr. D. Del. 2006). Therefore, the offending provision may not necessarily be one that directly prohibits assignment of a contract, but may be one that indirectly interferes with a debtor's ability to realize the value of its assets. "De facto anti-assignment provisions may be found in a variety of forms including lease provisions that limit the permitted use of the leased premises, lease provisions that require payment of some portion of the proceeds or profit realized upon assignment, and cross-default provisions." *In re E-Z Serve Convenience Stores, Inc.*, 289 B.R. 45, 50 (Bankr. M.D.N.C. 2003) (citations omitted). Precluding the Debtors in this case from accepting credit bids form its lenders would severely limit the ability of the Debtors to realize the full value of the Debtor's assets.

9. Prior Equity was well aware that the Debtors' assets could be sold for a credit bid. The Debtors executed an acknowledgement of that certain Intercreditor Agreement dated December 20, 2006 which specifically references the rights of the Debtors' secured creditors to credit bid for the Debtors' assets.

10. Prior Equity's argument that the Stalking Horse Bidder should be required to make a deposit is illogical under the circumstances. The Stalking Horse Bidder is owed in excess of $73,000,000. The Stalking Horse Bidder is not receiving a break-up fee under the bidding procedures. It makes no sense to require the Stalking Horse Bidder to put up a cash deposit when its credit bid is far less than its secured claim and when the Stalking Horse Bidder is not receiving a break-up fee.

11. Finally, Prior Equity's Opposition is really a sale objection, not a bidding procedures objection, and is at best premature. There is currently no default under the Trust Agreement. As this Court is aware, until a sale is approved by this Court, there is no sale of assets. The Stalking Horse Bid is merely a minimum bid that any and all other qualified bidders can bid against, including those bidders who will be submitting cash bids at the auction.

WHEREFORE, the Debtors respectfully request that the Court (i) grant the relief requested in the Motion; and (ii) grant such other and further relief as the Court deems just and proper.

Dated: September 29, 2011
Wilmington, Delaware

LANDIS RATH & COBB LLP

William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
J. Landon Ellis (No. 4852)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: chipman@lrclaw.com
olivere@lrclaw.com
ellis@lrclaw.com

*Proposed Counsel to Debtors and Debtors-in-Possession*