## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 11-12707 (KJC) |
| MTB BRIDGEPORT-NY OPERATING LLC, *et al.*,[1] | (Jointly Administered) |
| Debtors. | Ref No. 11 |

**FINAL ORDER (I) AUTHORIZING POST-PETITION SECURED FINANCING PURSUANT TO SECTIONS 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) AND 503(b) OF THE BANKRUPTCY CODE; (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE; (III) PROVIDING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES PURSUANT TO SECTIONS 361, 362, AND 363 OF THE BANKRUPTCY CODE; (IV) MODIFYING THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE; AND (V) PROVIDING RELATED RELIEF**

Upon the motion (the "**Motion**") dated August 26, 2011 of debtors and debtors-in-possession MTB Bridgeport-NY Operating LLC ("**MTB Operating**"), and MTB Bridgeport-NY Licensee LLC ("**MTB Licensee**," and, where applicable, MTB Operating and MTB Licensee are each individually referred to as a "**Debtor**" and collectively as the "**Debtors**") in these cases (the "**Chapter 11 Cases**"), for the entry of an interim order approving the DIP Facility (as defined below) on an interim basis (the "**Interim Order**") and entry of this Order approving the DIP Facility (defined below) on a final basis (the "**Final Order**," and together with the Interim Order, the "**DIP Orders**") authorizing the Debtors, pursuant to title 11 of the United States Code (the "**Bankruptcy Code**"), including sections 105(a), 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) thereof, and the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are MTB Bridgeport-NY Operating LLC (0459) and MTB Bridgeport-NY Licensee LLC (4381).

-1-

**Rules**"), including Rules 2002, 4001, and 9014, to: (i) obtain postpetition financing (the "**DIP Facility**") and enter into a senior secured priming and superpriority debtor-in-possession credit agreement (together with all schedules and exhibits thereto, the "**DIP Credit Agreement**," and together with all security, pledge, guaranty, and other lien and loan documents entered into in connection therewith and as further amended, restated, supplemented or otherwise modified from time to time, the "**DIP Credit Documents**"),[2] substantially in the form annexed to the Motion as **Exhibit A**, by and among the Debtors as Borrower and NRJ TV LLC (the "**DIP Lender**") as lender, all in respect of the obligations set forth in the DIP Credit Documents and herein (the "**DIP Obligations**"); (ii) grant mortgages, security interests, liens and superpriority claims for the benefit of the DIP Lender in respect of the DIP Obligations as provided herein and in the DIP Credit Documents, including, subject to entry of this Final Order, with respect to Avoidance Action Proceeds (defined below); (iii) use Cash Collateral (defined below); (iv) provide Adequate Protection (defined below) to the Prepetition Secured Parties (defined below); (v) fund postpetition allowed fees and expenses of Retained Professionals (defined below) and the Carve-Out (defined below); (vi) , obtain a postpetition loan of up to $650,000 dollars under the DIP Credit Agreement; and (vii) grant related relief; and upon all of the pleadings filed with the Court; and evidence presented in support of the Motion; and the Court, having considered the Motion and the exhibits attached thereto, including, without limitation, the DIP Credit Agreement; and in accordance with Bankruptcy Rule 4001(c)(2) and (c)(3), due and proper notice of the Motion having been given; and a hearing to consider approval of the DIP Facility on a final basis having been held and concluded (the "**Final Hearing**"); and the Court having

---

[2] Unless otherwise defined herein, all capitalized terms used herein have the meanings ascribed to such terms in the Motion, DIP Credit Agreement and DIP Credit Documents.

*18279085v2*

noted the appearances of parties in interest at the Final Hearing on the record; and all of the proceedings held before the Court; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates (the "**Estates**") and their creditors; and after due deliberation and consideration, and sufficient cause appearing therefor,

THIS COURT HEREBY FINDS:[3]

A.    <u>Chapter 11 Filed</u>. On August 26, 2011 (the "**Petition Date**"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Each Debtor is continuing in the management and possession of its business and properties as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner and no statutory committee (a "**Committee**") has, as of the date of this Final Order, been appointed in these Chapter 11 Cases.

B.    <u>Jurisdiction and Venue</u>. Consideration of this Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2). This Court has jurisdiction over this matter and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    <u>Notice and Hearing</u>. The Debtors represent that notice of the relief sought by the Motion, and the Final Hearing with respect thereto was delivered to the following parties in interest: the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); the DIP Lender; the Prepetition Second Lien Lender; the Federal Communications Commission; the Internal Revenue Service; any parties asserting a lien on any of the Debtors' property; and the entities listed on the Debtors' consolidated list of largest unsecured creditors

---

[3] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

that was annexed to the Debtors' chapter 11 petitions, and all parties requesting notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"). Under the circumstances, such notice constitutes due, sufficient and adequate notice of the Motion, Final Hearing and this Final Order pursuant to the Bankruptcy Rules, including Bankruptcy Rules 2002, 4001(b), 4001(c) and (d), 5003(e) and 9014 and section 102(1) of the Bankruptcy Code, as required by sections 363(b) and 364(c) of the Bankruptcy Code, and no further notice of the Motion or this Final Order is necessary or required.

      D.    Prepetition Secured Obligations.

      (1)    The Debtors represent that pursuant to that certain First Lien Credit Agreement, as amended on January 16, 2007 and October 16, 2007 (as may be further amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition First Lien Credit Agreement**," and together with that certain Security Agreement and that certain Guaranty and such other agreements, documents, notes and instruments in respect thereof, the "**Prepetition First Lien Credit Documents**") between and among the Debtors and NRJ TV LLC (as successor-in-interest to the lenders therein) (the "**Prepetition First Lien Lender**"), the Prepetition First Lien Lender made loans and extended other financial accommodations to the Debtors prior to the Petition Date. The Debtors' obligations in respect of the Prepetition First Lien Credit Documents are collectively referred to as the "**Prepetition First Lien Obligations**," and the collateral securing the Prepetition First Lien Obligations shall be referred to as the "**Prepetition First Lien Collateral**."

      (2)    The Debtors represent that pursuant to that certain Second Lien Credit Agreement, as amended on January 16, 2007 and October 16, 2007 (as may be further amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Second Lien**

**Credit Agreement**") and that certain Security Agreement and that certain Guaranty and such other agreements, documents, notes and instruments in respect thereof, the "**Prepetition Second Lien Credit Documents**") between and among the Debtors and Bernard National Loan Investors and Fortress Value Recovery Fund I LLC (as successor-in-interest to the agent and lenders therein, the "**Prepetition Second Lien Lender**"), the Prepetition Second Lien Lender provided financing and extended other financial accommodations to the Debtors prior to the Petition Date. The Debtors' obligations in respect of the Prepetition Second Lien Credit Documents are collectively referred to as the "**Prepetition Second Lien Obligations**," and the collateral securing the Prepetition Second Lien Obligations shall be referred to as the "**Prepetition Second Lien Collateral**."

(3)     Where applicable, the Prepetition First Lien Obligations and the Prepetition Second Lien Obligations are collectively referred to as the "**Prepetition Secured Obligations**;" the Prepetition First Lien Credit Documents and the Prepetition Second Lien Credit Documents, are collectively referred to as the "**Prepetition Credit Documents**;" the Prepetition First Lien Lender and the Prepetition Second Lien Lender are collectively referred to as the "**Prepetition Debt Holders**;" the Prepetition First Lien Collateral and the Prepetition Second Lien Collateral shall be collectively referred to as the "**Prepetition Collateral**;" the security interests and liens granted to the Prepetition Debt Holders are collectively referred to as the "**Prepetition Liens**;" the Prepetition Debt Holders are collectively referred to as the "**Prepetition Secured Parties**;" and the DIP Lender and Prepetition Secured Parties are collectively referred to as the "**Secured Parties**."

(4)     The Debtors represent that the Prepetition Secured Parties are parties to that certain Intercreditor Agreement dated as of December 20, 2006 (as amended, supplemented

or otherwise modified from time to time, the "**Intercreditor Agreement**"), pursuant to which the liens securing the Prepetition Second Lien Obligations are contractually subordinated to the liens securing the Prepetition First Lien Obligations. Among other things, the Intercreditor Agreement governs the parties' rights on various issues including priority, enforcement and distributions, including with respect to actions taken in these Chapter 11 Cases.

      E.      <u>Necessity and Best Interest</u>.

      (1)      The Debtors represent that an immediate and critical need exists for the Debtors to obtain authority for use of Cash Collateral and to obtain funds to maintain the stability of their businesses. The use of Cash Collateral alone would be insufficient to meet the Debtors' postpetition liquidity needs and provide the necessary assurances to customers, suppliers and regulatory authorities. The Debtors are unable to obtain the required funds (i) in the forms of (w) unsecured credit or debt allowable under section 503(b)(1) of the Bankruptcy Code, (x) an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, (y) unsecured debt having the priority afforded by section 364(c)(l) of the Bankruptcy Code or (z) debt secured only as described in section 364(c)(2) or (3) of the Bankruptcy Code or (ii) on terms more favorable than those offered by the DIP Lender under the DIP Budget (defined below), the other DIP Credit Documents and this Final Order.

      (2)      The Debtors have requested that, pursuant to the terms of the DIP Credit Documents, the DIP Lender make loans and advances and provide other financial accommodations to the Debtors. The Debtors represent that the ability of the Debtors to continue their businesses and operate under chapter 11 of the Bankruptcy Code depends upon the Debtors obtaining such financing. The DIP Lender is willing to make such loans and advances and provide such other financial accommodations on a secured basis, as more particularly

described herein, pursuant to the terms and conditions of the DIP Credit Documents. Accordingly, the relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtors' businesses, the management and preservation of their assets and properties, and is in the best interests of the Debtors, their Estates and creditors.

(3)     The entry of this Final Order is consistent with Sections 6.2 and 6.5 of the Intercreditor Agreement and shall not be deemed to violate any provision of the Intercreditor Agreement.

(4)     The terms of the DIP Credit Documents have been negotiated at arms' length and in "good faith," as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their Estates and creditors.  The DIP Lender is extending financing to the Debtors in good faith and the DIP Lender is entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

(5)     The Debtors (in consultation with their advisors) have determined that (i) the DIP Budget is reasonable and will allow the Debtors to operate in the Chapter 11 Cases without the accrual of unpaid allowed administrative expenses; and (ii) the DIP Budget includes all reasonable, necessary, and foreseeable expenses to be incurred for the period set forth in the DIP Budget.

(6)     Based on the Debtors' representations set forth above, it is in the best interests of the Debtors' Estates that they be allowed to finance their operations under the terms and conditions set forth herein.  The relief requested by the Motion is necessary to avoid harm to the Debtors' Estates, and good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein, and the immediate entry of this Final Order.  The terms of the DIP Facility and the use of Cash Collateral are fair and reasonable, reflect the Debtors'

exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

The Court, having determined that good cause exists for the relief requested in the Motion,

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1. <u>Motion</u>. The Motion is granted on a final basis to the extent provided herein. Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits.

2. <u>Authorization to Use Cash Collateral</u>. The Debtors are authorized to use Cash Collateral, subject to and as set forth in the DIP Budget, this Final Order and the DIP Credit Documents. For purposes of this Final Order, the term "**<u>Cash Collateral</u>**" shall mean and include all "cash collateral" as defined by section 363(a) of the Bankruptcy Code. Without limiting the generality of the foregoing, Cash Collateral shall include all cash proceeds of Prepetition Collateral in which the Prepetition Secured Parties have an interest, whether such interest existed as of the Petition Date or arises thereafter pursuant to this Final Order, any other order of this Court, applicable law or otherwise; <u>provided</u>, <u>however</u>, Cash Collateral of the Prepetition Secured Parties shall not include loan proceeds of the DIP Facility.

3. <u>DIP Borrowing Authorization</u>.

a. The Debtors are hereby authorized to (i) enter into the DIP Credit Agreement substantially in the form annexed to the Motion as Exhibit A and the other DIP Credit Documents and (ii) borrow funds, incur debt and perform their obligations in accordance with the terms and conditions of the applicable DIP Credit Documents. The Debtors are authorized to enter into and perform the transactions contemplated in this Final Order and the

DIP Credit Documents and to borrow under the DIP Credit Agreement on an interim basis the Interim DIP Facility, subject to the terms and conditions of the DIP Budget, this Final Order and the other DIP Credit Documents. The DIP Credit Agreement and the other DIP Credit Documents shall constitute and are hereby deemed to be the legal, valid and binding obligations of the Debtors party thereto and each of their respective Estates, enforceable against each such Debtor and its respective Estate in accordance with the terms hereof and the DIP Credit Documents and any successor of each such Debtor or any representative of the Estates (including a trustee, responsible person, or examiner with expanded powers). The DIP Lender and any other parties to whom obligations are or may be owed pursuant to any DIP Credit Documents shall have the rights set forth in the DIP Credit Documents to make loans, advances and/or financial accommodations pursuant to the terms and conditions thereof.

b.      The Debtors acknowledge, represent, stipulate and agree that: the Debtors have obtained all authorizations, consents and approvals necessary from, and have made all filings with and given all notices to, all federal, state and local governmental agencies, authorities and instrumentalities required to be obtained, made or given by the Debtors in connection with the execution, delivery, performance, validity and enforceability of the DIP Credit Documents.

c.      In entering into the DIP Credit Documents and obtaining the use of Cash Collateral, and as consideration therefor and for the other accommodations and agreements of the DIP Lender reflected herein and in the DIP Credit Documents, the Debtors hereby agree that until such time as all of the DIP Obligations are indefeasibly paid in final in full in cash and the DIP Credit Agreement and DIP Credit Documents are terminated in accordance with the terms thereof, the Debtors shall not in any way prime or seek to prime the DIP Obligations, the DIP

18279085v2

Liens or the DIP Superpriority Claims (defined below) provided to the DIP Lender under this Final Order by offering a subsequent lender or a party in interest a superior or *pari passu* lien or administrative expense pursuant to sections 326, 330, 331, 364(d), 503(b), 506, 507(a), 507(b), 552 or 726 of the Bankruptcy Code or otherwise or acquiescing thereto; each Debtor is jointly and severally liable for, and hereby absolutely and unconditionally guarantees to the DIP Lender and its respective successors and assigns, the full and prompt payment when due (whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter) and performance of, all DIP Obligations owed or hereafter owing to DIP Lender by each other Debtor.

d.      Each Debtor agrees that (i) its guarantee obligation hereunder shall be, and is, absolute and unconditional for all purposes in these Chapter 11 Cases and is a present and continuing guaranty of payment and not of collection, and (ii) its obligations under this Final Order and any DIP Credit Document shall not be discharged until the indefeasible payment, in full, in cash of the DIP Obligations, and the termination of the lending commitments under the DIP Credit Documents.

e.      In (a) making the decision to make the DIP Loan; (b) administering the DIP Loan; (c) extending financial accommodations to the Debtors under the DIP Credit Agreement; and (d) making the decision to collect the indebtedness and obligations of the Debtors, the DIP Lender shall not be considered to be exercising control over any the operations of the Debtors, or to be acting as a 'responsible person' with respect to the operation or management of the Debtors, so long as the actions of the DIP Lender does not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by a Debtor, or otherwise cause liability to arise

18279085v2

to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Comprehensive Environmental Response, Compensation and Liability Act, sections 9601 et seq. of title 42, United States Code, as amended, or any similar federal or state statute).

4.    DIP Interest, Fees, Expenses and Reserves.

a.    The DIP Obligations shall bear interest at the applicable rate set forth in the DIP Credit Documents (including any applicable default rate after the occurrence of an Event of Default), and be due and payable in accordance with this Final Order and the DIP Credit Documents, in each case without further notice, motion or application to, order of, or hearing before, this Court.

b.    No attorney or advisor to the DIP Lender shall be required to file an application seeking compensation for services or reimbursement of expenses with this Court; provided, however, advisors and counsel to the DIP Lender's fees, costs and expenses will be paid solely by the DIP Lender and not out of the DIP Loan and will not be added to the Prepetition First Lien Obligations.

c.    The DIP Lender retains the right in its reasonable discretion in consultation with the Debtors to establish or modify reserves pursuant to the DIP Credit Agreement, and shall affirmatively establish and fund a reserve for the Carve-Out and payment of Retained Professionals.

5.    DIP Obligations.    Upon their execution, the DIP Credit Documents shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with their terms; **provided, however,** that notwithstanding any other provision of this Final Order or of the other DIP Credit Documents, the Debtors shall not incur DIP

Obligations in a principal amount greater than the Final DIP Facility. No obligation, payment, transfer or grant of security under this Final Order or the other DIP Credit Documents shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or any applicable nonbankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim. The Debtors shall use the DIP Facility solely as provided in the DIP Orders and the DIP Credit Documents. From and after the Petition Date, the DIP Facility and Cash Collateral shall not, directly or indirectly, be used to pay expenses of the Debtors or otherwise disbursed except for those expenses and/or disbursements that are expressly permitted under the DIP Budget and the other DIP Credit Documents.

6. <u>DIP Budget</u>. The amount of the DIP Facility and Cash Collateral authorized to be used shall be pursuant to a budget (as amended, supplemented, extended or otherwise modified from time to time, the "**DIP Budget**") and (i) actual disbursements with respect to professional fees shall not exceed the projected disbursements for professional fees in the DIP Budget by any amount, as of the end of any full week after the Petition Date; (ii) actual disbursements for all expenses other than professional fees shall not exceed 110% of the projected disbursements in the DIP Budget, as of the end of any full week after the Petition Date; and the amount of actual receipts shall not be less than 90% of the projected receipts in the DIP Budget, as of the end of any full week after the Petition Date, in each case, as determined on a cumulative weekly basis commencing on the starting date of the DIP Budget on a total budget basis (as opposed to a line-by-line basis). The DIP Budget shall be prepared by Debtors. The DIP Budget shall be in form and substance satisfactory to the DIP Lender. Each subsequent DIP Budget shall be in form and substance satisfactory to the DIP Lender for the time period set forth therein, but in no event beyond the Maturity Date. The DIP Budget may be amended, supplemented, extended or

otherwise modified from time to time in any manner as to which Debtors and the DIP Lender mutually agree in writing without further order of this Court or advance notice. The Debtors shall provide any modified DIP Budget to the U.S. Trustee and counsel to the Prepetition Second Lien Lender and counsel for any Committee; **provided**, **however**, the Debtors may take appropriate actions with respect to the confidentiality of any portion of the DIP Budget. If the U.S. Trustee or the Committee objects to a DIP Budget, the Debtors may continue to operate and use DIP Facility Proceeds and Cash Collateral under such DIP Budget until the Court orders otherwise.

7.     <u>DIP Reporting Requirements</u>.  The Debtors shall deliver to the DIP Lender such reports, data and other information required to be delivered pursuant to the DIP Credit Documents, including, without limitation, a variance report delivered to the DIP Lender on or before Tuesday of each week following the entry of this Final Order showing a comparison between: (i) the Debtors' projected disbursements provided in the DIP Budget and the Debtors' actual disbursements; and (ii) the Debtors' projected receipts shown in the DIP Budget and the Debtors' actual receipts, each through the end of the immediately preceding week. The Debtors shall deliver to counsel to the Prepetition Second Lien Lender and counsel to any Committee such reports, data and other information required to be delivered by the Debtors to the DIP Lender pursuant to the DIP Credit Documents promptly and in the same form delivered to the DIP Lender; **provided**, **however**, the Debtors may take appropriate actions with respect to confidentiality of such reports, data and other information.

8.     <u>Amendment of DIP Credit Documents</u>.  The DIP Credit Documents may be amended, supplemented or otherwise modified (including, without limitation, waivers of any provisions of the DIP Credit Documents) without further order of this Court; **provided**,

**however**, that the Debtors shall provide advance written notice of any such amendment, supplement or other modification to counsel to each of the U.S. Trustee, the Prepetition Second Lien Lender, counsel to any Committee (which, to the extent such contact information for such parties is known to the Debtors, shall be transmitted by fax or e-mail, and, if not known, by overnight mail), each of which shall have five (5) business days from the date of such notice within which to object in writing to such amendment, supplement or other modification, and upon any such timely written objection, such amendment, supplement or other modification shall only be permitted pursuant to an order of this Court (the entry of which may be sought on an expedited basis); and, **provided further**, any (i) increase in the aggregate of the DIP Lender's lending commitments, (ii) increase in the fees or applicable interest rates, other than increases described in the DIP Credit Documents, or (iii) modification of the maturity of the DIP Obligations under the DIP Credit Documents, shall be permitted only after notice, a hearing and entry an order of this Court approving such amendment, supplement or modification (the entry of which may be sought on an expedited basis).

9.     <u>Superpriority Claims and DIP Liens</u>.  Pursuant to the Bankruptcy Code, including sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) thereof, in respect of the DIP Obligations under the DIP Credit Agreement, the other DIP Credit Documents and this Final Order, the DIP Lender is granted the following:

a.     Superpriority administrative expense claims pursuant to Bankruptcy Code section 364(c)(1) with priority over all other administrative expenses pursuant to the Bankruptcy Code (including the kinds specified in or arising or ordered pursuant to Bankruptcy Code sections 326, 330, 331, 503(b), 506(c), 507(a), 507(b), and 726 thereof or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual

-14-

lien, levy or attachment), which superpriority expenses of the DIP Lender shall be subject and subordinate only to the Carve-Out (the "**DIP Superpriority Claims**"); **provided**, **however**, for the avoidance of doubt, pursuant to applicable bankruptcy law, the granting of such DIP Superpriority Claims does not affect the status and superior priority of any liens, including the DIP Liens (defined below), Prepetition Liens and Prior Permitted Senior Liens (defined below);

   b.     First priority, priming security interest in and lien pursuant to Bankruptcy Code section 364(d)(1) (the "**Section 364(d)(1) Liens**") on all assets of the Debtors and their Estates (the "**DIP Collateral**") of any nature whatsoever and wherever located, whether first arising prior to or following the Petition Date, now owned or hereafter acquired, including all accounts, all chattel paper, all commercial tort claims, all deposit accounts, all documents, all equipment, all general intangibles, all goods, all instruments, all inventory, all investment property, all letter-of-credit rights, all books and records, and all proceeds, rents, profits, and offspring of the foregoing (including Cash Collateral), and all Avoidance Action Proceeds,[4] which Section 364(d)(1) Liens shall be senior to any existing liens or claims, subject and subordinate only to (i) the Carve-Out, and (ii) liens on property of a Debtor (including the proceeds of such property) that are in existence on the Petition Date but only to the extent a lien on such property (x) is valid, binding, perfected, enforceable and not avoidable, and (y) the lien on such property (or the proceeds of such property, as applicable) on the Petition Date was senior in priority to the Prepetition Liens (the items referenced in the foregoing clauses (x), (y) and (z) being referred to collectively as the "**Prior Permitted Senior Liens**"), **provided**, **however**, for the avoidance of doubt, the Prepetition Liens are not Prior Permitted Senior Liens;

---

4 "**Avoidance Action Proceeds**" means proceeds of all claims and causes of actions under Chapter 5 of the Bankruptcy Code, including, without limitation, those under sections 502(d), 544, 545, 547, 548, 549, 550, 552(b) and 553, and state laws of similar import.

c. A first priority security interest and lien pursuant to Bankruptcy Code section 364(c)(2) on all unencumbered property of the Debtors and the Estates (the "**Section 364(c)(2) Liens**"), which Section 364(c)(2) Liens shall be subject and subordinate only to the Carve-Out; and

d. A junior security interest and lien pursuant to Bankruptcy Code section 364(c)(3) on all property of the Debtors and the Estates that is subject and subordinate to a Prior Permitted Senior Lien (the "**Section 364(c)(3) Liens**"), which Section 364(c)(3) Liens are also subject and subordinate to the Carve-Out.[5]

10. <u>DIP Collateral</u>. The DIP Liens include liens upon and security interests in (i) all of those items and types of collateral in which security interests may be created under Article 9 of the Uniform Commercial Code, (ii) all of those items and types of collateral not governed by Article 9 of the Uniform Commercial Code, including, without limitation, to the extent not permitted by applicable nonbankruptcy law, licenses issued by any federal or state regulatory authority, any leasehold or other real property interests, and commercial tort claims of the Debtors, (iii) any and all other DIP Collateral of any nature or form, and (iv) the products, rents, offspring, profits, and proceeds of any of the foregoing. None of the DIP Obligations, DIP Liens or DIP Superpriority Claims shall (a) be subject to or *pari passu* with any lien or security interest that is avoided and preserved for the benefit of the Estates under section 551 of the Bankruptcy Code, (b) be subject to or *pari passu* with any inter-company claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, (c) be subject to sections 510, 549, or 550 of the Bankruptcy Code, or (d) hereafter be

---

[5] The Section 364(d)(1) Liens, Section 364(c)(2) Liens, and Section 364(c)(3) Liens shall be collectively referred to as the "**DIP Liens**."

-16-

subordinated to or made *pari passu* with any other lien or security interest under sections 361, 363 or 364 of the Bankruptcy Code or otherwise, except as expressly provided in this Final Order.

      11.    <u>Carve-Out</u>.

          a.    <u>Generally</u>.  Upon the occurrence of the Carve-Out Trigger Date (defined below), the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens (defined below), and the 507(b) Claims (defined below) of the Prepetition Secured Parties shall each be subject and subordinate to the payment (from either Cash Collateral or proceeds resulting from liquidation of DIP Collateral or Prepetition Collateral) of the following: (i) the unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code (for the avoidance of doubt, there is no limitation on the obligations of the Debtors and their Estates with respect to unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code); plus (ii) the reasonable fee and expense claims of the respective retained professionals of the Debtors and any Committee that have been approved by this Court during the Chapter 11 Cases pursuant to sections 327, 328, and 1103 of the Bankruptcy Code or otherwise (the retained professionals of the Debtors and any Committee are collectively referred to as the "**Retained Professionals**"), which were incurred (A) on and after the Petition Date and prior to the Carve-Out Trigger Date in amounts not in excess of the amounts set forth in the DIP Budget, and (B) on and after the Carve-Out Trigger Date in an aggregate amount not exceeding $25,000 in the aggregate for all Retained Professionals **provided that**, in each case, such fees and expenses of the Retained Professionals are in accordance with the DIP Budget on a cumulative basis for the applicable period, are ultimately allowed on a final basis by this Court (whether or not such fees and

expenses are allowed by this Court as of or after the Carve-Out Trigger Date) pursuant to sections 330 and 331 of the Bankruptcy Code or otherwise and are not excluded from the Carve-Out under Paragraph 16 of this Final Order, **provided**, **however**, nothing herein shall waive the right of any party to object to the allowance of any such fees and expenses (all such amounts in this Paragraph 11(a)(i) and (ii), together with the limitations set forth therein, are collectively referred to as the "**Carve-Out**").

b.      <u>Carve-Out Trigger Date</u>.  The term "**Carve-Out Trigger Date**" means the date on which the DIP Lender provides written notice to the Debtors, the U.S. Trustee and counsel to any Committee that the Carve-Out is invoked, which notice may be delivered only on or after the occurrence of an Event of Default under the DIP Credit Documents or upon the Maturity Date.

c.      <u>Reduction of Amounts</u>.  The fixed dollar amount of $25,000 available to be paid under the Carve-Out following the Carve-Out Trigger Date on account of allowed fees and expenses incurred on and after the Carve-Out Trigger Date shall be reduced, dollar-for-dollar, by the aggregate amount of payments made on and after the Carve-Out Trigger Date on account of fees and expenses incurred on and after the Carve-Out Trigger Date to Retained Professionals, the U.S. Trustee and Clerk of the Bankruptcy Court on account of such allowed fees and expenses (whether from Cash Collateral, any proceeds of the DIP Financing, or otherwise).

d.      <u>Reservation of Rights</u>.  Fees and expenses of Retained Professionals incurred in excess of the amounts provided therefor under the DIP Budget (including, for the avoidance of doubt, as set forth in Paragraph 11 in this Final Order with respect to Debtors' professionals), including after the occurrence of the Carve-Out Trigger Date, shall, subject to

18279085v2

approval of the Court, constitute allowed administrative expenses of the Debtors' Estates pursuant to, *inter alia*, sections 328, 330(a), 331, and 503(b) of the Bankruptcy Code. Notwithstanding the foregoing, the Carve-Out shall be limited to cumulative amounts provided under the DIP Budget for the applicable period. The payment of any fees or expenses of the Retained Professionals pursuant to the Carve-Out shall not, and shall not be deemed to (i) reduce any Debtor's obligations owed to any of the Secured Parties, or (ii) modify, alter or otherwise affect any of the liens and security interests of such parties in the DIP Collateral or Prepetition Collateral. The Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Retained Professionals, the U. S. Trustee or Clerk of the Bankruptcy Court (or of any other entity) incurred in connection with the Chapter 11 Cases or any successor case, and nothing in this Final Order or otherwise shall be construed to obligate such parties in any way to pay such compensation to or to reimburse such expenses.

12.     Waiver of Right to Surcharge.  Because (i) of the consent of the DIP Lender to the current payment of administrative expenses of the Debtors' Estates in accordance with the DIP Budget, (ii) the subordination of the DIP Liens, Adequate Protection Liens and 507(b) Claims of the Prepetition Secured Parties to the Carve-Out, the Secured Parties are each entitled to a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code and (b) any "equities of the case" claims or other claims under sections 105(a) or 552(b) of the Bankruptcy Code. Accordingly, no costs or expenses of administration or other charge, lien, assessment or claim incurred at any time (including, without limitation, any expenses set forth in the DIP Budget) by any Debtor or any other person or entity shall be imposed or charged against any or all of the DIP Collateral, the Prepetition Collateral or the Secured Parties or their respective claims under the Bankruptcy Code, including sections 105(a), 506(c), 552(b) thereof, or otherwise, and the Debtors, on behalf

*18279085v2*

of their Estates, waive any such rights. It is expressly understood by all parties that in making all such undertakings and proceeding in compliance with the DIP Budget, this Final Order and the DIP Credit Documents, the Secured Parties have each relied on the foregoing provisions of this Paragraph. Notwithstanding any approval of or consent to the DIP Budget, nothing in this Final Order shall constitute or be deemed to constitute the consent by any of the Secured Parties to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including, without limitation, any amounts set forth in the DIP Budget) against such party, its claims or its collateral under sections 105(a), 506(c) or 552(b) of the Bankruptcy Code or otherwise and no such consent shall be implied from any other action or inaction by such parties.

13. <u>Automatic Perfection</u>. The (i) DIP Liens granted to the DIP Lender, for the benefit of the DIP Lender pursuant to this Final Order and the DIP Credit Documents, and (ii) Adequate Protection Liens granted pursuant to this Final Order to the Prepetition Secured Parties shall be valid, binding, perfected and enforceable by operation of law upon entry of this Final Order by the Court without any further action by any party. The (i) DIP Lender in respect of the DIP Liens, and (ii) Prepetition Secured Parties in respect of the Adequate Protection Liens, shall each not be required to enter into or to obtain any control agreements, landlord waivers, mortgagee waivers, bailee waivers or warehouseman waivers or to give, file or record any financing statements, mortgages, deeds of trust, leasehold mortgages, notices to account debtors or other third parties, notices of lien or similar instruments in any jurisdiction (including filings with the United States Patent and Trademark Office, the United States Copyright Office or any similar agency in respect of trademarks, copyrights, trade names or patents with respect to intellectual property) (collectively, the "**Perfection Documents**"), or obtain consents from any licensor or similarly situated party in interest, or take any other action in order to validate and to

perfect the DIP Liens granted under the DIP Credit Documents and this Final Order and the Adequate Protection Liens granted under this Final Order and approved hereby, all of which are automatically perfected by the entry of this Final Order. If the Secured Parties, independently or collectively, in each of their sole discretion respectively, choose to obtain, enter into, give, record or file any Perfection Documents, (x) all such Perfection Documents shall be deemed to have been obtained, entered into, given, recorded or filed, as the case may be, as of the Petition Date, (y) no defect in any such act shall affect or impair the validity, perfection, priority or enforceability of the DIP Liens and Adequate Protection Liens, and (z) such liens shall have the relative priority set forth herein notwithstanding the timing of filing of any such Perfection Documents. In lieu of recording or filing any Perfection Documents, the Secured Parties may, in each of their sole discretion, choose to record or file a true and complete copy of this Final Order in any place that any Perfection Document would or could be recorded or filed (which may include a description of the collateral appropriate to be indicated in a recording or filing at such place of recording or filing), and such recording or filing by the Secured Parties shall have the same effect as if such Perfection Document had been filed or recorded as of the Petition Date. In addition, the DIP Lender may, in its sole discretion, at the Debtors' expense, require the Debtors to file or record any Perfection Document. The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Lender all Perfection Documents as the DIP Lender may reasonably request.

14. <u>Stipulations and Waivers</u>: **<u>Subject to and without prejudice to the rights of any Committee and any other party in interest as set forth in Paragraph 15 below</u>**, after consultation with their attorneys and financial advisors, the Debtors admit, stipulate, and agree to

the following, and make the releases and waivers set forth below and as described in this Final Order and the DIP Credit Documents, on and as of the Petition Date:

        a.        <u>Prepetition Credit Documents</u>. Prior to the Petition Date, the Debtors entered into (i) the Prepetition First Lien Credit Documents with the Prepetition First Lien Lender, and (ii) the Prepetition Second Lien Credit Documents with the Prepetition Second Lien Lender. Pursuant to the Prepetition Credit Documents, the Prepetition First Lien Lender, and the Prepetition Second Lien Lender were each granted the Prepetition Liens in the Prepetition Collateral in respect of the Prepetition Secured Obligations.

        b.        <u>Prepetition Secured Obligations</u>.

        (1)        Pursuant to the Prepetition First Lien Credit Documents, as of August 22, 2011, the Debtors were indebted and liable to the Prepetition First Lien Lender, without defense, counterclaim, recoupment, or offset of any kind, in the aggregate principal amount of at least $73,853,833.21 in respect of the Prepetition First Lien Obligations, plus accrued but unpaid interest at the applicable contractual rate, costs, premiums, fees and expenses to the extent permitted under the Prepetition First Lien Credit Documents.

        (2)        Pursuant to the Prepetition Second Lien Credit Documents, as of August 22, 2011, the Debtors were indebted and liable to the Prepetition Second Lien Lender, without defense, counterclaim, recoupment or offset of any kind, in the aggregate principal amount of approximately $46,319,171.95 in respect of the Prepetition Second Lien Obligations, plus accrued but unpaid interest at the applicable contractual rate, costs, premiums, fees and expenses to the extent permitted under the Prepetition Second Lien Credit Documents.

        (3)        The Prepetition Secured Obligations constitute the legal, valid and binding obligations of the Debtors that are party thereto, enforceable in accordance with their

terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code) and no portion of the Prepetition Secured Obligations is subject to avoidance, recharacterization, disgorgement, recovery or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

      c.     <u>Prepetition Liens</u>.  The Prepetition Liens are (i) valid, binding, perfected, enforceable, liens on and security interests in the Prepetition Collateral, (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and (iii) subject only to (A) after giving effect to this Final Order, the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, and the Carve-Out, and (B) Prior Permitted Senior Liens.

      d.     <u>Releases and Waivers</u>.  The Debtors do not have, and hereby forever release and waive, any claims, objections, challenges, counterclaims, causes of action, defenses, recoupment, or setoff rights, whether known or unknown, and whether arising under the Bankruptcy Code or applicable non-bankruptcy law, against each of the (i) Prepetition First Lien Lender, and any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees from the beginning of time; (ii) Prepetition Second Lien Lender, and any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees from the beginning of time.

      e.     <u>Default</u>.  The Debtors are in default with respect to their Prepetition Secured Obligations and an Event of Default has occurred under the Prepetition Credit Documents.

      f.     <u>Right to Credit Bid</u>.  NRJ TV LLC has the right under Section 363(k) of the Bankruptcy Code to use the DIP Obligations, DIP Liens and DIP Superpriority Claims and

-23-

the Prepetition First Lien Obligations, the Prepetition First Lien Collateral, the Adequate Protection Liens granted to the Prepetition First Lien Lender and 507(b) Claims granted to the Prepetition First Lien Lender as a credit bid at any sale of the Debtors' assets and NRJ TV LLC has the right to assign its credit bid to any third party designated by NRJ TV LLC. Subject to the terms of the Intercreditor Agreement, including, without limitation, Section 6.3 of the Intercreditor Agreement, the Prepetition Second Lien Lender has the right under Section 363(k) of the Bankruptcy Code to use the Prepetition Second Lien Obligations, the Prepetition Second Lien Collateral, the Adequate Protection Liens granted to the Prepetition Second Lien Lender and 507(b) Claims granted to the Prepetition Second Lien Lender as a credit bid at any sale of the Debtors' assets and the Prepetition Second Lien Lender has the right to assign its credit bid to any third party designated by the Prepetition Second Lien Lender.

      15.     Effect of Debtors' Stipulations and Waivers on Third Parties.

      a.     Generally.    The admissions, stipulations, agreements, releases, and waivers set forth in the immediately preceding Paragraph 14 of this Final Order (collectively, the "**Prepetition Lien and Claim Matters**") are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other Estate representative and all parties-in-interest and all of their successors-in-interest and assigns, including, without limitation, any Committee, unless, and solely to the extent that, (i) any Committee or another party-in-interest, other than the Debtors, with standing and requisite authority, has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this Final Order) challenging the Prepetition Lien and Claim Matters (each

such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "**Challenge**") by no later than 60 days from the from the date of appointment of any Committee, or upon conclusion of the date that is 75 days from the date of entry of the Interim Order for all other parties-in-interest, other than the Debtors, that have standing and requisite authority as such applicable date (such applicable date is referred to as a "**Challenge Deadline**") may be extended from time to time in the reasonable discretion of (y) the Prepetition First Lien Lender with respect to the Prepetition First Lien Obligations, or (z) by this Court for cause shown pursuant to an application filed by any Committee or any other party in interest prior to the expiration of the Challenge Deadline; and (ii) this Court rules in favor of the plaintiff or movant in any such timely commenced Challenge proceeding and any such ruling is not subject to any further review or appeal; provided, however, that in the event the Debtors' cases are converted to cases under Chapter 7 of the Bankruptcy Code or a Chapter 11 trustee is appointed in the Debtors' cases prior to the Challenge Deadline, then the Challenge Deadline with respect to the Chapter 7 trustee or Chapter 11 trustee shall be extended to a date that is 60 days from conversion of the Debtors' cases to Chapter 7 or appointment of a Chapter 11 trustee, as applicable; provided, further, that the Challenge Deadline shall not be extended with respect to any Committee that is appointed after the Challenge Deadline has initially occurred.

b. <u>Binding Effect</u>. To the extent no Challenge is timely commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall pursuant to this Final Order become binding, conclusive and final on any

*18279085v2*

Committee and any other person, entity or party-in-interest in the Chapter 11 Cases, and their successors and assigns, and in any successor case for all purposes and shall not be subject to challenge or objection by any party-in-interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers or other representative of the Estates. Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding on all parties-in-interest and preclusive as provided in sub-paragraph (a) above except to the extent that each of such Prepetition Lien and Claim Matters is expressly the subject of a timely filed Challenge. To the extent any such Challenge proceeding is timely commenced, subject to the terms of the Intercreditor Agreement, the Prepetition First Lien Lender and the Prepetition Second Lien Lender shall be entitled to include the related costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending themselves in any such proceeding pursuant to the Prepetition First Lien Credit Documents and Prepetition Second Lien Documents, respectively; provided, however, that irrespective of whether a Challenge proceeding is timely commenced, with respect to holders of the Prepetition Second Lien Obligations, such Challenge proceeding shall not affect the provisions of the Interim Order, this Final Order or any other DIP Orders related to the DIP Facility's compliance with and satisfaction of the Intercreditor Agreement.

16. <u>Limitation on Use of Proceeds</u>. Notwithstanding anything in this Final Order to the contrary, no portion or proceeds of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the DIP Budget shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with: (a) objecting, contesting or raising any defense to the validity,

18279085v2

perfection, priority, or enforceability of, or any amount due under, the DIP Credit Documents or the Prepetition Credit Documents or any security interests, liens or claims granted under the DIP Orders, the DIP Credit Documents, or the Prepetition Credit Documents to secure such amounts; (b) asserting any Challenges, claims, actions or causes of action against any of the Secured Parties or any of their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; (c) preventing, hindering or otherwise delaying enforcement or realization on the DIP Collateral or the Prepetition Collateral; or (d) seeking to amend or modify any of the rights granted to the Secured Parties under the DIP Orders, the DIP Credit Documents or the Prepetition Credit Documents, including seeking to use Cash Collateral and/or DIP Collateral on a contested basis; provided, however, that no more than $15,000 in the aggregate of the proceeds of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, and the Carve-Out may be used by any Committee to investigate (but not prosecute or Challenge) Prepetition Lien and Claim Matters.

17. <u>Avoidance Action Proceeds</u>. Notwithstanding anything in this Final Order or any other DIP Credit Document to the contrary, Avoidance Action Proceeds shall be DIP Collateral and shall be subject to the DIP Liens and DIP Superiority Claims until such time as the DIP Obligations have been indefeasibly paid in full in cash. Avoidance Action Proceeds shall not be subject to the Adequate Protection Liens of the Prepetition Secured Parties or the 507(b) Claims of the Prepetition Secured Parties.

18. <u>Adequate Protection</u>.

a. <u>Generally</u>. This Court finds that the Adequate Protection provided in this Final Order, including, without limitation, in this Paragraph 18, is reasonable and sufficient to protect the interests of the Prepetition Secured Parties. Notwithstanding any other provision

hereof, the grant of Adequate Protection to the Prepetition Secured Parties pursuant to the Final Order is without prejudice to the right, subject to the Intercreditor Agreement, of each of the Prepetition Secured Parties or any other party in interest to seek adequate protection or to seek modification of a grant of Adequate Protection provided in this Final Order so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification.

b. Adequate Protection Liens. As adequate protection of the Prepetition Liens of the Prepetition Secured Parties under the applicable Prepetition Credit Documents ("**Adequate Protection**"), and subject to the Intercreditor Agreement, in accordance with sections 361 and 363(e) of the Bankruptcy Code, each of the Prepetition Secured Parties shall be granted valid, binding, perfected and enforceable security interests and replacement liens (collectively the "**Adequate Protection Liens,**") upon all property of the Debtors whether arising prepetition or postpetition of any nature whatsoever, wherever located, other than Avoidance Action Proceeds, in each case to secure the Prepetition Secured Obligations from the aggregate diminution, if any, subsequent to the Petition Date, in the value of the Prepetition Collateral. The Adequate Protection Liens are subject and subordinate to (A) the Carve-Out, (B) the DIP Obligations, DIP Liens and DIP Superpriority Claims, and (C) the Prior Permitted Senior Liens. None of the Adequate Protection Liens shall (x) be subject to any lien or security interest that is avoided and preserved for the benefit of the Estates under section 551 of the Bankruptcy Code, (y) subject to any inter-company claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, or (z) hereafter be subordinated to or made *pari passu* with any other lien or security interest under sections 361, 363 or 364 of the Bankruptcy Code or otherwise except as expressly provided in this Final Order

*18279085v2*

and the DIP Credit Documents, including, without limitation, with respect to the Carve-Out, Prior Permitted Senior Liens, DIP Obligations, DIP Liens and DIP Superpriority Claims. The Adequate Protection Liens of the Prepetition Second Lien Lender shall be junior and subordinate to the Adequate Protection Liens of the Prepetition First Lien Lender. The Adequate Protection Liens granted in the DIP Orders shall not modify the provisions of the Intercreditor Agreement with respect to the priority and subordination of the liens and security interests of the Prepetition Secured Parties in the Prepetition Collateral.

      c.     <u>507(b) Claims</u>. To the extent the Prepetition Secured Parties have claims allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code, notwithstanding the provision of Adequate Protection hereunder, the Prepetition Secured Parties are hereby each granted an administrative expense claim pursuant to Bankruptcy Code section 507(b) (each, a "**507(b) Claim**") of the Bankruptcy Code with priority over all other administrative expenses, but in all cases subject and subordinate to the Carve-Out, Prior Permitted Senior Liens, DIP Obligations, DIP Liens and DIP Superpriority Claims. Such 507(b) Claims of the Prepetition Second Lien Lender shall be junior and subordinate to the 507(b) Claims of the Prepetition First Lien Lender.

      19.     <u>Indemnification</u>. The Debtors shall indemnify the DIP Lender and its respective affiliates, successors and assigns and the officers, directors, employees, agents, advisors, controlling persons and members of each of the foregoing (each, an "**Indemnified Person**") and hold each of them harmless from and against all costs, expenses (including reasonable fees, disbursements and other charges of counsel) and liabilities of such Indemnified Person arising out of or relating to any claim or any litigation or other proceeding (regardless of whether such Indemnified Person is a party thereto and regardless of whether such matter is initiated by a third

18279085v2

party or by the Debtors or any of their affiliates or shareholders) that relates to the DIP Facility or the DIP Orders, including the financial accommodations to the Debtors contemplated hereby, the Chapter 11 Cases, or any transactions in connection therewith, provided that no Indemnified Person will be indemnified for any cost, expense or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such Indemnified Person's gross negligence or willful misconduct. Nothing herein is meant to limit the scope of any indemnity provided for the benefit of the DIP Lender in the DIP Credit Documents. For the avoidance of doubt, this Paragraph 19 does not apply or otherwise affect any indemnification rights or obligations in respect of the Prepetition Secured Parties under the Prepetition Credit Documents.

20.     _Remedies._  Upon the occurrence of an Event of Default under the DIP Credit Documents or upon the Maturity Date, and in each case without further notice, motion or application to, order of, or hearing before, this Court, the DIP Lender is granted leave to cease making financial accommodations to the Debtors, charge interest at the default rate, accelerate any or all of the DIP Obligations and declare such DIP Obligations to be immediately due and payable in full, in cash, and the Debtors shall use Cash Collateral and DIP Facility proceeds only with the written consent of the DIP Lender and only to the extent required to avoid irreparable damage to the Debtors and their Estates. In addition, upon the Maturity Date or the occurrence of an Event of Default, and after providing five (5) business days prior notice to the Court, U.S. Trustee, counsel for the Debtors, counsel for any Committee, counsel for the Prepetition Second Lien Lender, then the DIP Lender shall be entitled to exercise all of its rights and remedies under this Final Order and the DIP Credit Documents, including, without limitation, foreclose upon the DIP Collateral or otherwise enforce the DIP Obligations, DIP Liens and DIP Superpriority

Claims on any or all of the DIP Collateral and/or to exercise any other default-related remedies under the DIP Credit Documents, this Final Order or applicable law in seeking to recover payment of the DIP Obligations. For the avoidance of doubt, with respect to Prior Permitted Senior Liens, any exercise of such rights and remedies shall be in accordance with applicable non-bankruptcy law in respect of Prior Permitted Senior Liens. During the five (5) business day notice period, the Debtors, any Committee or any other party in interest may seek an order of the Court staying the DIP Lender's exercise of such remedies against the DIP Collateral and, if no such stay is obtained, then the DIP Lender may exercise any and all such rights and remedies without further order of the Court or notice to any party and the Debtors' authority to use Cash Collateral under this Final Order shall terminate except as expressly permitted by the DIP Lender.

21.    *Access to DIP Collateral*. Subject to the provisions of paragraph 20 of this Final Order, notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Lender contained in this Final Order or the DIP Credit Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Credit Documents, upon written notice to the landlord of any leased premises that an Event of Default or the Maturity Date has occurred under the DIP Credit Documents, the DIP Lender may, subject to the applicable notice provisions, if any, in this Final Order and any separate agreement by and between such landlord and the DIP Lender, enter upon any leased premises of the Debtors or any other party for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder, provided that the DIP Lender shall only be obligated to pay rent of the Debtors that first accrues after the DIP Lender's written notice

referenced above and that is payable during the period of such occupancy by the DIP Lender, calculated on a daily per diem basis. Nothing herein shall require the DIP Lender to assume any lease as a condition to the rights afforded to the DIP Lender in this Paragraph. Furthermore, subject to any applicable non-bankruptcy law, any landlord's lien, right of distraint or levy, security interest or other interest that any landlord, warehousemen or landlord's mortgagee may have in any DIP Collateral of the Debtors located on such leased premises, to the extent the same is not void under section 545 of the Bankruptcy Code, is hereby subordinated to the DIP Obligations, DIP Liens, and DIP Superpriority Claims.

22. _Insurance Policies._ Effective as of entry of this Final Order, the Secured Parties shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that in any way relates to DIP Collateral or Prepetition Collateral, as applicable; provided, however, for the avoidance of doubt, this provision shall not delete any other additional insured or loss payee from any insurance policy.

23. _Successors and Assigns._ This Final Order, the DIP Credit Agreement and the other DIP Credit Documents shall be binding upon all parties in interest in these Chapter 11 Cases, including any subsequently appointed trustee, responsible individual, examiner with expanded powers, or other Estate representative.

24. _Survival._ The provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any subsequent order (other than entry of any subsequent DIP Order), and the rights, remedies, powers, privileges, liens and priorities of the Secured Parties provided for in this Final Order and in any DIP Credit Document shall not be modified, altered or impaired in any manner by any order, including any order (i) confirming any plan of

18279085v2

reorganization or liquidation in any of the Chapter 11 Cases (and, to the extent not indefeasibly paid in full in cash, the DIP Obligations shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code, each of the Debtors having hereby waived such discharge); (ii) converting any of the Chapter 11 Cases to a Chapter 7 case; (iii) dismissing any of the Chapter 11 Cases; or (iv) any superseding cases under the Bankruptcy Code. The terms and provisions of this Final Order as well as the DIP Obligations, DIP Liens, DIP Superpriority Claims, DIP Credit Documents, and Adequate Protection Liens shall continue in full force and effect notwithstanding the entry of any such order, and such rights, claims and liens shall maintain their priority as provided by this Final Order and the DIP Credit Documents to the maximum extent permitted by law until all of the DIP Obligations are indefeasibly paid in full, in cash.

25.     Good Faith.  The DIP Facility, the use of Cash Collateral, and the other provisions of this Final Order, the DIP Credit Agreement and the other DIP Credit Documents have been negotiated in good faith and at arm's-length among the Debtors and the Secured Parties, and the extension of the financial accommodations to the Debtors by the Secured Parties pursuant to this Final Order and the DIP Credit Documents have been and are deemed to be extended in good faith, as that term is used in section 364(e) of the Bankruptcy Code.  The Secured Parties are entitled to, and are hereby granted, the full protections of section 364(e) of the Bankruptcy Code.

26.     Subsequent Reversal or Modification.  If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability under the DIP Orders and the DIP Credit Documents by the Debtors prior to the date of receipt of written notice to the DIP Lender of the effective date of such action; or (ii) the validity and enforceability of any lien, administrative

18279085v2

expense, right, or priority authorized or created hereby or pursuant to the DIP Orders and the DIP Credit Documents, including, without limitation, the DIP Obligations, DIP Liens and DIP Superpriority Claims, Prepetition Secured Obligations, Adequate Protection Liens, and 507(b) Claims. Notwithstanding any such reversal, stay, modification or vacatur, any postpetition indebtedness, obligation or liability incurred by the Debtors to the Secured Parties prior to written notice to the DIP Lender shall be governed in all respects by the original provisions of this Final Order and the DIP Credit Documents, and the DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted pursuant to this Final Order and the DIP Credit Documents.

27. No Waiver. This Final Order shall not be construed in any way as a waiver or relinquishment of any rights that the Secured Parties may have to bring or be heard, subject to the Intercreditor Agreement, on any matter brought before the Court. Any consent, modification, declaration of default, or exercise of remedies or non-exercise of remedies under or in connection with this Final Order or the DIP Credit Documents shall require the approval of DIP Lender, and, as and to the extent required by the voting provisions of the DIP Credit Agreement and shall not be deemed a waiver or relinquishment of any of the rights of the DIP Lender. Nothing contained in this Final Order (including without limitation, the authorization to use any Cash Collateral) shall impair, prejudice or modify any rights, claims or defenses available in law or equity to the Secured Parties, including, without limitation, the right to (a) request conversion of the Debtors' Chapter 11 Cases to cases under chapter 7, (b) seek to terminate the exclusive rights of the Debtors to file, and solicit acceptances of, a plan of reorganization under section 1121 of the Bankruptcy Code or propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, (c) object to the fees and expenses of any Retained

Professionals, and (d) seek relief from the automatic stay. All such rights, claims and defenses, and the rights, objections and defenses of all parties in connection therewith, are hereby reserved.

28. <u>Additional Defaults</u>. In addition and without limitation of the Events of Default set forth in and defined in the DIP Credit Documents or this Final Order, it shall be a default hereunder (and constitute an "Event of Default" under the DIP Credit Documents) if (a) an order is entered dismissing or converting any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or appointing a Chapter 11 trustee or an examiner with expanded powers, (b) a sale of substantially all assets is proposed by the Debtors without the written consent of the DIP Lender that would not indefeasibly pay the DIP Obligations in full in cash, (c) any other motion is filed by the Debtors for any relief directly or indirectly affecting the DIP Collateral in a material manner unless all DIP Obligations have been indefeasibly paid in final, in full, in cash, and completely satisfied upon consummation of the transaction contemplated thereby, or (d) the Debtors fail to comply with any of the terms of this Final Order, including the DIP Budget (subject to all applicable variances), or any stipulation, representation or covenant by the Debtors stated herein is false or misleading. Any order for dismissal or conversion shall be automatically deemed to preserve the rights of the Secured Parties under this Final Order. No order providing for the sale of substantially all of the assets of the Debtors under section 363 of the Bankruptcy Code shall be entered by the Court unless, upon the closing of such transaction, all liens securing the DIP Obligations and Prepetition Secured Obligations (in their respective priority) are transferred to the proceeds of such sale and such proceeds or are applied to permanently and indefeasibly repay the DIP Obligations or Prepetition Secured Obligations, as applicable, in full, in cash. If an order dismissing any of these Chapter 11 Cases under section 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, (i) the claims, security interests, liens and

18279085v2

claims granted to or for the benefit of the Secured Parties pursuant to this Final Order shall continue in full force and effect and shall maintain their priorities as provided in this Final Order, as applicable, until all DIP Obligations and Prepetition Secured Obligations shall have been paid and satisfied in full (and that such claims and liens, shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and liens.

29.  <u>Order Governs</u>.  In the event of any conflict between the provisions of this Final Order and the DIP Credit Documents, the provisions of this Final Order shall control and govern to the extent of such conflict.

30.  <u>Right to Credit Bid</u>.  Pursuant to Section 363(k) of the Bankruptcy Code and/or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code, NRJ TV LLC shall have the exclusive right to use the DIP Obligations, DIP Liens and DIP Superpriority Claims and the right to use the Prepetition First Lien Obligations, the Prepetition First Lien Collateral, the Adequate Protection Liens granted to the Prepetition First Lien Lender and 507(b) Claims granted to the Prepetition First Lien Lender to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Debtor's assets and to assign its credit bid to any designee of NRJ TV LLC.  Subject to the terms of the Intercreditor Agreement, including, without limitation Section 6.3 of the Intercreditor Agreement, pursuant to Section 363(k) of the Bankruptcy Code and/or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code the Prepetition Second Lien Lender shall have the right to use to use the Prepetition Second Lien Obligations, the Prepetition Second Lien Collateral, the Adequate Protection Liens granted to the Prepetition Second Lien Lender and 507(b) Claims granted to the Prepetition Second Lien

*18279085v2*

Lender to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Debtors' assets. The Prepetition Second Lien Lender may assign its credit bid to any designee of the Prepetition Second Lien Lender. In consideration of the DIP Facility and as Adequate Protection to the Prepetition Secured Parties, it shall be an Event of Default for (i) NRJ TV LLC not to be allowed to credit bid the DIP Obligations, DIP Liens and DIP Superpriority Claims and the Prepetition First Lien Obligations, the Prepetition First Lien Collateral, the Adequate Protection Liens granted to the Prepetition First Lien Lenders and 507(b) Claims granted to the Prepetition First Lien Lenders; and (ii) subject to the terms of the Intercreditor Agreement and this Final Order, the Prepetition Second Lien Lender not to be allowed to credit bid Prepetition Second Lien Obligations, the Prepetition Second Lien Collateral, the Adequate Protection Liens granted to the Prepetition Second Lien Lender and 507(b) Claims granted to the Prepetition Second Lien Lender.

31.     No Marshaling. None of the DIP Collateral, Prepetition Collateral or the Secured Parties shall be subject to the doctrine of marshaling.

32.     Headings. The headings in this Final Order are for reference purposes only and will not in any way affect the meaning and interpretation of the terms of this Final Order.

33.     Immediate Effect. This Final Order is hereby deemed effective immediately pursuant to Bankruptcy Rule 6004(h).

Dated: Wilmington, Delaware
       October 4, 2011

                                   _____
                                   THE HONORABLE KEVIN J. CAREY
                                   UNITED STATES BANKRUPTCY JUDGE

18279085v2